DANIEL L. DYSART, Judge.
| iThis is a dispute over the ownership of oyster leases. Appellant, Helen Scott Ehle Barrois, the independent administra-trix of the succession of Antoinette Bernice Cognevich Barrois, argues that the leases are the separate property of her deceased mother-in-law. Appellees, Russell E. Bar-rois, Jr; and Kenneth B. Barrois, co-executors of the succession of Mancil Barrois, argue that the leases are community property acquired by Mancil and Bernice during the marriage.- The trial court found that the oyster leases in question are community property. For the reasons that follow, we affirm'the judgment of the trial court.
FACTUAL BACKGROUND:
The subject oyster leases were issued sometime in the 1960’s to Antoinette Bernice Cognevich Barrois (“Bernice”), during her marriage to Mancil Barrois (“Mancil”). Mancil died testate in 1975, leaving to Bernice the entire disposable portion of his property. His succession was opened on July 13, 1978, with Bernice being named executrix. Mancil and Bernice had two children together, Austin and |gBernita. Mancil had four other children from two prior marriages: Joseph, Kenneth, Gerard and Donald.
After Mancil’s death, Bernice continued to maintain the oyster leases, applying for new leases as they expired. Bernice died intestate, dn 1981, and her succession was opened on August 8, 1983. Her daughter, Bemita, and a step-son, Gerard,,were appointed co-administrators of her estate. The two successions were consolidated in 1985;. however, no judgment of possession has been rendered in either succession.
The oyster leases were continually renewed on behalf of Bernice’s estate. In 1989, Bernice’s son, Austin, was named sole administrator of her estate. In 1990, Bernita renounced her mother’s succession. After Austin’s death, his widow, Helen, was appointed independent administra-trix of Bernice’s succession; .
*232 The succession proceedings were dormant until 2014, when Helen received a damage award relative to the BP oil spill. At that time, the co-executors of Mancil’s succession filed a Petition for Delivery of Funds and Property, for Accounting, for Declaratory Judgment, for Sequestration, for Damages and Other Relief. The court ordered Helen to deposit $40,000 into the registry of the court, and to not sell, transfer, encumber or otherwise alienate an annuity that she had purchased with some of the proceeds. Helen applied for a supervisory writ to this Court, which vacated the judgment.[1]
1 ^Subsequently, after remand, Helen filed a Motion for 'Partial Summary Judgment seeking to have the trial court declare the oyster leases to be the separate property of Bernice and her estate. The co-executors of Mancil’s succession filed a Motion for Partial Summary Judgment seeking to have the trial court declare the oyster leases and all revenues derived from them to be the community property of the marriage of Mancil and Bernice. Additionally, the co-executors requested that the trial court order Helen to deliver one-half of all payments and distributions from the Deepwater Horizon Court-Supervised Settlement Program or related claims to the co-executors of the Mancil Succession.
The trial court denied Helen’s Motion for Partial Summary Judgment and granted the Motion for Partial Summary Judgment filed by the co-executors of Mancil’s succession, finding that the oyster leases were community property acquired during the marriage of Mancil and Bernice. The trial court did not order delivery of any monies to the Mancil succession. This appeal follows.
DISCUSSION:
Initially, we will address the Answer to Appeal and Motion to Supplement the Record filed on behalf of the Mancil succession.
Following rendition of the judgment in the trial court, the Mancil Succession filed a Motion to Amend and Supplement Judgment seeking to have the second part of its Motion for Partial Summary Judgment granted. It argued that the judgment had no practical effect as it did not grant the entirety of the relief sought |4in their Motion for Summary Judgment. According to the Mancil Succession’s Answer to Appeal, the trial court denied the motion.[2]
In its Answer to Appeal, the Mancil Succession seeks to have this Court allow it to supplement the record with its Motion to Amend Judgment. Additionally, it seeks to supplement the record with Helen’s opposition and the memoranda in support of each position.
As a court of record, we cannot consider any document or pleading that is not part of the record on appeal. Succession of Amaro, 130-0022, p. 5 (La.App. 4 Cir. 5/15/13), 116 So.3d 913, 916. Moreover, the hearing on the Motion to Amend was held after the trial court signed the Motion for Appeal. Thus, the trial court did not have jurisdiction to rule on the Motion to Amend.
Louisiana Code Civ. Proc. art.2088 provides in part:
*233 A. The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal or on the granting of the order of appeal, in the case of a devolutive appeal. Thereafter, the trial court has jurisdiction in the case only over those matters not reviewable under the appeal, including the right to:
⅜ ⅝ ⅝
(4) Correct any misstatement, irregularity, informality, or omission of the trial record, as provided in Article 2132;
[[Image here]]
Louisiana Code Civ. Proc. art. 2132 provides:
A record on appeal which is incorrect or contains misstatements, irregularities- or informalities, or which omits a material part of the trial record, may be correet-ed | fieven after the record is transmitted to the appellate court, by the parties by stipulation, by the trial court or by the order of the appellate court. All other questions as to the content and form of the record shall be presented to the appellate court.
It is our understanding from the Motion to Supplement submitted to this Court that the trial court denied the Motion to Amend because it ruled that it was procedurally improper for the trial court to make a substantive amendment to ' the judgment. The trial court was correct. However, that issue is also not in the correct procedural posture to be considered by this Court. The pleadings and documents with which Appellees seek to supplement the record do not form part of the trial record on appeal. This Court cannot amend a judgment to include issues not ruled on by the trial court. ■
Accordingly, the only judgment on appeal is the one rendered on April 15, 2015, that adjudicated the issue of whether the oyster leases obtained by Antoinette Bernice Cognevich Barrois during her marriage to Mancil Barrois are community property. Therefore, that is the sole issue for this Court to review.
It is undisputed that the subject oyster leases were purchased by Bernice diming her marriage to Mancil. Louisiana Civil Code art. 2338 defines community property in part as:
“[Pjroperty acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; property acquired with community things or with community and separate things, unless classified as separate under Article 2341; property donated to the spouses jointly; natural and civil fruits of community property; damages awarded for loss or injury to a thing belonging to the community; and all other property not classified by law as separate property.”
UFurther, “[t]hings in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property.” La. Civ.Code art. 2340.
The record reveals that for years the oyster leases were referred to as assets of both successions. There are various petitions contained in the record indicating that the successions of Mancil and Bernice acted together to pay debts of the successions and to sublease the oyster leases.
The leases continued to be renewed on behalf of Bernice’s succession only; thus, when the damages were paid by BP following the oil spill, Helen, as independent *234 administratrix óf Bernice’s estate, received a check for $384,000.00. The co-executors of Mancil’s succession sought to recover half of the damage award.
Helen argues that upon Mancil’s death in 1975, the community was terminated. Thus, wheil Bernice renewed the leases in the year subsequent to Mancil’s death, the leases became Helen’s separate property.
This proposition is erroneous for two reasons: 1) La. R.S. 56:426 specifically provides that “the renewal or extension of existing oyster leases shall not be deemed new leases;” and, 2) because oyster lease rights are heritable, under both Louisiana community property law and Louisiana oyster lease law, an undivided one-half interest in the leases passed into ■ Mancil’s succession and a one-half interest passed into Bernice’s succession.
Helen relies on two Louisiana Supreme Court cases, Avenal v. State, 03-3521 (La.10/19/04), 886 So.2d 1085, and Jurisich v. Jenkins, 99-0076 (La.10/19/99), 749 So.2d 597.
|7As explained by the trial court in its Reasons for Judgment, the language in Jurisich relied on by Helen is dicta:
In rebuttal, the defendants make three assertions. First, they contend that at the time of lease renewal it is common for lessees,' as well as itself, to make changes in the original lease, e.g., most often a lessee might propose to extend the acreage leased. Although no such showing has been made in the present matter, we point out that in such instance a new and different contract comes into being, and the provisions relative to lease renewal are not applicable.... Accordingly, we find that this first argument is easily distinguishable and clearly irrelevant to the facts now before us. (citations omitted).
Jurisich v. Jenkins, 99-0076, p. 8, 749 So.2d at 601-2.
The Jurisich case involved oyster leases to which the State added several new clausés prior to renewal. If the new clauses were not accepted, the State would terminate the leases. The lessees sued arguing that the State did not have the discretion to refuse to renew the leases unless the leased water bottoms were no longer capable of supporting oyster populations. The Supreme Court agreed, characterizing the new clauses as onerous. The ruling in Jurisich has no bearing on the facts of this case.
As also explained by the trial court, the Avenal case has. no application to the issue in this case, that is, whether the oyster leases are community property of Bernice and Mancil, or Bernice’s separate property. The Avenal case dealt with whether the State could insert a hold harmless clause in oyster leases renewals which the lessees claimed were damaged by freshwater intrusion.
Additionally, Helen cites to Succession of Acosta, 396 So.2d 499 (La.App. 4th Cir.1981), in which a widow signed new oil distribution contracts, which were determined to be the widow’s separate property. However, the issue in Acosta indifferent from the case before us. In Acosta, the decedent had an oil distribution company that had a contract with Exxon in effect at the time of his death. When the contract expired following his death, the widow signed a new sales agreement which was similar to the earlier agreement, but which also set forth different quantities of fuel, new prices, payments and terms of delivery. This Court found that the contract signed by the decedent was' community property; however, the new contract signed by the widow was her separate property because they were not merely *235 modifications or continuations of the prior agreement.
In this case, the oyster leases issued to Bernice and subsequently to her succession are simply continuations of the prior leases originally issued during Bernice’s marriage to Mancil. The sole reason that the heirs were in a position to renew the leases was due to their status as the incumbent leaseholders pursuant to La. R.S. 56:428, which provides for the right of first refusal to owners of expiring leases. Renewing the leases does not transform them from assets of the community into Bernice’s separate property.
Accordingly, we agree with the trial court that the oyster leases acquired during the marriage of Bernice and Mancil Barrois are community property. Further, upon Mancil’s 'death, one-half interest of those leases became part of his estate. The partial summary judgment granted in favor of the Mancil Succession is affirmed. This matter is remanded for further proceedings consistent with this opinion.
AFFIRMED
JENKINS, J., concurs in results.

. 2014-C-0846. The judgment was vacated for failure of the trial court to set a bond as required by those portions of the judgment that granted the writ of sequestration, La. Code Civ, Proc. art. 3574, and by those portions of the judgment that enjoined Helen from alienating an annuity she had purchased with BP proceeds, La.Code Civ. Proc. art. 3610.

. The judgment denying the motion is not contained in the record.